[Crim. No. 1692. Second Appellate District, Division Two.—August 17, 1928.]

THE PEOPLE, Respondent, v. O. B. BACHMAN, Appellant.

Robert W. Daniels and George F. Lord for Appellant.

U. S. Webb, Attorney-General, and John L. Flynn, Deputy Attorney-General, for Respondent.

THOMPSON (IRA F.), J.—The defendant was charged by information with the crime of violating the Corporate Securities Act in the following respect: That he did, on November 15, 1926, sell to and take a subscription of J. P. Kemmerer for 10,000 shares of the Bonanza King Extension Mines Company for the sum of $1,000 without first having

applied and secured from the corporation commissioner a permit authorizing the sale of such stock. There was another count, but the defendant was not tried for the offense therein contained. The jury returned a verdict of guilty and this appeal is from the judgment and order denying defendant's motion for a new trial.

But one point is urged as a reason for reversal, to wit: The insufficiency of the evidence to sustain the verdict. Appellant's counsel recognize the rule that it is not the function of the appellate tribunal to weigh testimony, but they insist that in the instant cause there is a failure to show that the stock which was the subject of the sale was not the personal stock of the appellant, or, to reframe it, that there is no showing that the subscription was for treasury stock. It is not disputed that the subscription was in fact taken and $1,000 paid by Kemmerer, nor is it denied that there was never at any time a permit. The only question concerns the ownership of the stock which was the subject of the sale. The subscription was taken, $500 was paid and a receipt was executed in the following words:

"Bonanza King Consolidated Mines and Reduction Works Fenner, California. O. B. Bachman, President and Treasurer. Wade Hampton Williams Vice-President; A. E. Kinney, Secretary, Secretary's office, Las Vegas, Nevada. All agreements are contingent upon strikes, accidents and other delays unavoidable or beyond our control and subject to declaration of trust recorded March 10, 1923 in Clark County, Nevada.

"Trustee receipt Bonanza King Extension Mines Company.

"This certifies that J. P. Kemmerer has paid the sum of one thousand dollars, $500.00 cash and 90 day note for $500.00 for ten thousand shares of the Bonanza King Extension Mines Company, Organizing.

"This subscription is accepted by the Trustee upon the understanding and agreement that this receipt shall be exchanged for an interim Certificate representing . . . shares, upon the completion of the Corporation under the laws of the State of Nevada.

"November 15th, 1926.

"O. B. BACHMAN, Trustee."

The incorporation of the company did not take place until March 9, 1927. Mr. Kemmerer testified that the appellant

told him of several prominent men who were connected with the company and that "he wanted just a few men in it"; that appellant also informed him that a Mr. Smale had gone out and looked at the great quantities of ore and then had "wanted in on it," as had also Jim and Mat Amos, who "had already signed up"; that then he "signed this piece of paper, the same as the other men had done," for "ten thousand shares of Bonanza King Extension Mines Stock"; that the money was to be used for development work; that the company was "Incorporated for two million shares at fifty cents a share; 250,000 shares at twenty cents each to be sold now"; that he "was purchasing the stock of the corporation, issued by the corporation itself," and that under no circumstances would he have bought any individual stock. A witness J. C. Amos, who has been mentioned as Jim Amos, testified that appellant came to his office and told him that "he was organizing a Bonanza King Extension Company, and offered for sale stock; in other words, he offered to sell some stock of the Bonanza King Extension Company, for the development of the ground. . . . " This same witness also testified that after he had told appellant that he never bought mining stock appellant wanted either him or his brother to become an officer and take some organization stock and that they signed an agreement whereby the witness was to receive something like 20,000 shares. Another witness also testified that at about the same time appellant offered to take his subscription for stock in the same company, which offer the witness declined when he was informed that the organization was not yet perfected.

The testimony which we have recited not only warranted the jury in returning a verdict of guilty, but also, in the absence of any evidence to the contrary, compelled the conclusion that the appellant owned no stock which could be the subject of sale, and was, in fact, acting through the designation of himself as trustee, and endeavoring to, and was actually, selling stock for cash in a corporation not yet organized. We are of the opinion that the evidence establishes a clear and palpable violation of the Corporate Securities Act.

Judgment and order affirmed.

Craig, Acting P. J., and Hazlett, J., *pro tem.*, concurred.